UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHMED T. RHUMA, ET AL., | No. 2:13-cv-2286 MCE AC PS |
| Plaintiffs, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| STATE OF LIBYA, | |
| Defendant. | |

INTRODUCTION

On October 1, 2014, the court held a status conference in which plaintiffs Ahmed T. Rhuma and Sam J. Duval (formerly known as Adel A. Rhoma) (collectively "plaintiffs") appeared. ECF No. 31. During the proceedings, the court discussed with plaintiffs their efforts to serve defendant the State of Libya and whether the court has subject matter jurisdiction under 21 U.S.C. §§ 1604 and 1605. Subsequently, the court issued an order directing plaintiffs to show cause why the undersigned should not recommend dismissal on the ground that the court lacks jurisdiction.

On October 20, 2014, plaintiffs responded to the court's order to show cause. ECF No. 34; see also ECF No. 35 (duplicate response). Plaintiffs state they "bring this suit against defendant, under violations of Human and Civil Rights for the illegal act of expropriation, extortion, and torture that was committed against the plaintiffs in 1979." Id. at 1.

Summarizing the facts of their complaint, plaintiffs state "[i]n 1979 the defendant changed its ideology in politics and became extreme communist and initiated terror programs to terminate certain families with democratic and capitalist ideology, by inflected [sic] upon them torture, imprisonment, expropriation of their Wealth." Id. at 2.  Plaintiffs contend that "[p]laintiffs' human and civil rights under U.S. Constitution and International law were violated due to the illegal act of the defendant" and "[t]he irreparable harm and damage caused to the plaintiff is a continuous injury, till just compensation is inserted as a remedy of law." Id.  Plaintiffs argue this action "invokes Human and Civil rights protection as an exception to the Foreign Sovereign immunities Act of 1976 . . . ." Id. at 4.

## LEGAL STANDARDS

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto.  See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).  Thus, federal courts have no power to consider claims for which they lack subject matter jurisdiction.  See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992).  The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction.  Id.; see also Spencer Enters., Inc. v. United States, 345 F.3d 683, 687 (9th Cir. 2003); Attorneys Trust v. Videotape Computers Prods., Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

The burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Thus, in the present action, plaintiffs bear the burden of demonstrating that subject matter jurisdiction exists over this complaint.  See, e.g., Tosco Corp. v. Comtys. for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330, provides "the exclusive source of subject matter jurisdiction over all suits involving foreign states or their instrumentalities." Gupta v. Thai Airways Int'l, Ltd., 487 F.3d 759, 763 (9th Cir. 2007) (citation and quotation omitted); Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434, (1989) (FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts."); 28

U.S.C. § 1603(a). Under FSIA, foreign states are presumptively immune from suit in federal and state courts, subject to a number of exceptions. Embassy of the Arab Republic of Egypt v. Lasheen, 603 F.3d 1166, 1169 (9th Cir. 2010); see also 28 U.S.C. § 1604. These exceptions are found in 28 U.S.C. § 1605 and § 1607, Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 488 (1983), and "focus on actions taken by or against a foreign sovereign." In re Republic of Phil., 309 F.3d 1143, 1150 (9th Cir. 2002). Exceptions to sovereign immunity include waiver, commercial activities and tortious injury caused in the United States. 28 U.S.C. §§ 1605, 1607. FSIA's waiver exception is to be "narrowly construed." Hilao v. Estate of Marcos (In re Estate of Marcos Human Rights Litig.), 94 F.3d 539, 546 (9th Cir. 1996) (quotations omitted).

## DISCUSSION

Although the precise nature of plaintiffs' claims is unclear from the face of the complaint, plaintiffs bring suit against the State of Libya under the "Sovereign Immunization Act of 1976" and seek $190,000,000.00 in damages for defendant's unspecified conduct that injured plaintiffs in an unspecified manner. Attached to the complaint are numerous exhibits, including a document titled "The Contract of Establishing Corporate," which appears to be a contract entered into on November 4, 1968 for the establishment of a company named The National Industrial Company for Minerals. ECF No. 1 at 8–11. Each of the partners listed on the contract -- Taher Ragab Rhuma, Abdul Wahed R. Rhuma, Mohamed Bashir El-Ferghani, Khalil Omar El Ghusabi, Ali El-Ghabou, and Mohamed Ali El-Fitouri -- owned approximately 16.66% of the shares of the corporation. At the status conference, plaintiffs confirmed that their complaint is intended to challenge the Libyan government's expropriation in Libya of this corporation and related assets.

In their response to the court's order to show cause, plaintiffs set forth four separate arguments in support of a finding that the court has jurisdiction over their action. Each argument is addressed in turn below.

A.   Proper Service

Plaintiffs first argue that defendant waived immunity by failing to appear after it was properly served. Id. However, as explained in the court's April 24, 2014 findings and recommendations, plaintiffs failed to properly serve the State of Libya under FSIA. ECF No. 18

at 4. Thus, any argument that defendant waived immunity based on plaintiffs' prior efforts at service lacks merit.

B.     Defendant is a State Sponsor of Terrorism

Plaintiffs argue defendant is not immune from suit because it is designated as a "State sponsoring Terrorism." Id. at 4-5. Plaintiffs argue that defendant began a "program of inflicting terror and torture in 1979, against plaintiffs' families" in the State of Libya, the effects of which "still hunt [sic] plaintiffs causing irreparable harm and emotional distress . . . ." Id. at 5. Plaintiffs argue they were "forced to flee Libya to avoid such torture and threating of life." Id. Plaintiffs argue that because defendant's alleged misconduct "took place in a time where defendant is designated as a state sponsor of terrorism . . . [the] exception's requirement has been satisfied." Id.

Section 1605A provides an exception to a foreign sovereign's immunity from suit for actions seeking money damages against a foreign sovereign for:

> personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1). Section 1605A(a)(2)(A)(i)(I) further provides that a court shall hear a claim under this section if:

> the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act, and, subject to subclause (II), either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section

28 U.S.C. § 1605A(a)(2)(A)(i)(I).

Here, the State of Libya was designated as a state sponsor of terrorism on December 29, 1979. See Rescission of Determination Regarding Libya, 71 Fed. Reg. 39696–02 (July 13, 2006). The State of Libya's designation was rescinded on July 13, 2006. Id. Thus, the State of Libya was not designated as a state sponsor of terrorism within the 6-month period before plaintiffs'

4

action was filed on November 4, 2013.[1]  Accordingly, the § 1605A exception to sovereign immunity does not apply.

C.     Defendant is Engaged in a Commercial Activity in the United States

Plaintiffs next argue that a "property nexus" under 28 U.S.C. § 1605(a)(3) is established because, among other things, defendant "engaged in a commercial activity in the United States." ECF No. 34 at 6–7.  In support of this argument, plaintiffs aver that while the "property location is outside the border line of the United States," defendant is a "sovereign nation [] represented on American soil by its political subdivision the Embassy of Libya in Washington DC . . . thus any commercial activity such as contracts of purchases, sells, and lease, conducted in the United States is considered a commercial act of the foreign state . . . ." Id. at 8.

The taking of property in violation of international law is insufficient to waive the State of Libya's immunity in the courts of the United States.  Section 1605(a)(3) sets forth additional requirements for waiver of immunity:

> . . . A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which rights in property taken in violation of international law are in issue and [1] that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or [2] that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States . . . .

28 U.S.C. § 1605(a)(3).  Thus, under the first clause, in addition to taking property in violation of international law, plaintiffs must also allege that the property (or property exchanged for it) (a) is present in the United States (b) in connection with a commercial activity (c) carried on in the United States.  Plaintiffs fail to set forth any allegations establishing these additional factors.

To the extent plaintiffs argue the second clause of § 1605(a)(3) provides a waiver of immunity, this argument fails.  Under the second clause "the property at issue must have been

---

[1] Moreover, it does not appear that plaintiffs seek damages for personal injury or death.  The present dispute appears to be about money and property exclusively.  However, because Libya was not designated as a state sponsor of terrorism during the 6 months preceding this lawsuit, the court would lack jurisdiction over any claims arising from personal injury or death.

5

1  taken in violation of international law." Siderman de Blake v. Republic of Arg., 965 F.2d 699,

2  711 (9th Cir. 1992). "[T]he exception does not apply where the plaintiff is a citizen of the

3  defendant country at the time of the expropriation, because '[e]xpropriation by a sovereign state

4  of the property of its own nationals does not implicate settled principles of international law.'"

5  Siderman de Blake, 965 F.2d at 711 (quoting Chuidian v. Philippine Nat. Bank, 912 F.2d 1095,

6  1105 (9th Cir. 1990)). Here, plaintiffs were citizens of the State of Libya at the time the alleged

7  taking occurred in 1979. See ECF No. 15 at 33 (plaintiff Ahmed T. Rhuma became a United

8  States citizen in 1996); id. at 40 (plaintiff Sam J. Duval became a United States citizen in 2013).

9  Thus, the alleged taking does not violate international law.

10      At the status conference, plaintiffs confirmed that the challenged acts of expropriation

11  took place exclusively in Libya. The Libyan government's consular presence in the United States

12  does not transform acts of the Libyan government in Libya into "commercial activity in the

13  United States." The takings exception under § 1605(a)(3) does not apply to the instant action.

14  D.    Plaintiffs' Constitutional Rights Have Been Violated

15      Finally, plaintiffs argue that their constitutional rights under the Ninth, Fourteenth and

16  Fifteenth Amendments have been violated by the defendant and "courts must protect the citizens

17  of the U.S. against foreign nations especially from those, which are not friendly and designated as

18  states sponsor of terrorism." Id. at 9–10. Plaintiffs were not United States citizens at the time the

19  alleged taking occurred. Moreover, allegations of constitutional violations cannot create

20  jurisdiction over a dispute with a foreign state. In order to proceed, plaintiffs must still establish

21  that an exception under FSIA applies.

22                                    CONCLUSION

23      For all the reasons explained above, none of the FISA exceptions apply. This court

24  therefore lacks jurisdiction to adjudicate plaintiff's claims against the State of Libya.

25  Accordingly,

26      IT IS HEREBY ORDERED that the October 2, 2014 order to show cause, ECF No. 32, is

27  discharged; and

28      IT IS HEREBY RECOMMENDED that this action be dismissed for lack of subject

1  matter jurisdiction.

2    These findings and recommendations are submitted to the United States District Judge
3  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days
4  after being served with these findings and recommendations, any party may file written
5  objections with the court and serve a copy on all parties.  Such a document should be captioned
6  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
7  shall be served and filed within fourteen days after service of the objections.  The parties are
8  advised that failure to file objections within the specified time may waive the right to appeal the
9  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10  DATED: October 28, 2014

　　　　　　　　　　　　　　　　　　ALLISON CLAIRE
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE